IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

CHRISTOPHER SHANE KNIGHT,                :
                                         :
                    Plaintiff,           :
                                         :
         v.                              :        Case No. 3:24-cv-093-TES-CHW
                                         :
SHERIFF JOHN Q. WILLIAMS, *et al.*,      :        Proceedings Under 42 U.S.C. § 1983
                                         :        Before the U.S. Magistrate Judge
                                         :
                    Defendant.           :
_____  :

REPORT AND RECOMMENDATION

Plaintiff Christopher Shane Knight filed a *pro se* civil rights complaint seeking relief under 42 U.S.C. § 1983 regarding his pre-trial detention at Athens-Clarke County Jail. (Docs. 1, 10). Defendants Officers Beasley and McCollum have filed a motion to dismiss, arguing that Plaintiff has failed to exhaust his administrative remedies, and that Defendants are entitled to qualified immunity. (Doc. 33). Plaintiff responded and opposes the motion. (Doc. 35). As discussed below, Defendants have shown that Plaintiff failed to exhaust his administrative remedies. Therefore, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 33) be **GRANTED**. In the alternative, it is **RECOMMENDED** that this action be **DISMISSED without prejudice** for failure to prosecute Rule 41(b) of the Federal Rules of Civil Procedure. *See, e.g., Brown v. Tallahassee Police Dep't*, 205 F. App'x 802, 802-03 (11th Cir. 2006).

I.    Background

Plaintiff brought this action on August 12, 2023, alleging constitutional violations against multiple defendants regarding his pre-trial detention at Athens-Clarke County Jail ("the Jail"). (Doc. 1). Following screening of Plaintiff's amended complaint under 28 U.S.C. § 1915A, the

1

Court allowed Plaintiff to proceed on his claims that Defendants failed to provide him adequate medical care and access to a shower. (Doc. 17). Defendants now move to dismiss Plaintiff's case, citing his failure to exhaust available administrative remedies and arguing that his requested relief is barred. (Doc. 33).

## II.    Failure to Exhaust

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust available administrative remedies before bringing an action with respect to prison conditions under 42 U.S.C. § 1983, of any other federal law. 42 U.S.C. § 1997(e)(a). Exhaustion in this context means proper exhaustion: prisoners must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in a federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). The exhaustion requirement is "designed 'to eliminate unwarranted federal-court interference with the administration of prisons'" by "'seek[ing] to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (quoting *Woodford*, 548 U.S. at 93).

The Eleventh Circuit's *Turner* opinion establishes a two-step process for reviewing motions to dismiss based on a prisoner's failure to exhaust. A reviewing court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Turner*, 541 F.3d at 1082. Second, if the complaint is not dismissed under step one, "the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. . . . Once the court makes findings on the disputed issues of fact, it then

decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1082–83 (internal citations omitted). As failure to exhaust is an affirmative defense under the PLRA, "defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.*

The Jail had a grievance procedure in place during the time Plaintiff was incarcerated. (Doc. 33-1). Under that procedure, an inmate should first present his grievance informally to jail staff. (*Id.*, p. 2). If that step does not resolve the issue, the responding deputy initials and dates the complaint form and gives it to the inmate who then has 15 days to submit a formal grievance to the Classification Unit. (*Id.*, pp. 3–4). An inmate may submit the formal grievance by placing it in the grievance box in the housing area, giving it to staff, or writing a letter if the inmate is not housed at the jail. (*Id.*). The complaint is then investigated by the Classification Unit, which provides a written response within 15 days. (*Id.*, pp. 5–6). If dissatisfied with the response, the inmate may appeal to the Jail Commander within 15 days of the response. (*Id.*, pp. 7–8). If the Jail Commander's response remains unsatisfactory, an inmate may appeal to the Sheriff. (*Id.*, pp. 9–11). The Jail grievance procedure does not provide a time in which the Sheriff must respond, however the Sheriff's response ends the administrative grievance process. (*Id.*, p. 11).

### A. Turner *Step One*

In considering whether dismissal for failure to exhaust is appropriate, under *Turner*'s step one the Court must consider first all the alleged facts, construed in favor of Plaintiff when the facts conflict. In his recast complaint, Plaintiff acknowledges that the Jail has a grievance procedure and claims he presented his complaints. (Doc. 10, p. 3). He clarifies that, "I only received a response from one, the rest I didn't. They tried to make the one issue multiple issues. I asked for more copies of § 1983 to refile, never heard back." (*Id.*). In his response to Defendants' motion, Plaintiff states

that he filed a grievance on January 2, 2024, concerning the Jail's "dead end grievance procedure." (Doc. 35, p. 1). Based on the information in his recast complaint and response, construed liberally in Plaintiff's favor, Plaintiff may have appropriately filed a grievance. As such, and in taking Plaintiff's version of facts as true as required by *Turner*'s step one, Plaintiff's claims arguably survive step one.

### B.  Turner *Step Two*

While Plaintiff's complaint is not subject to dismissal under step one of the *Turner* standard, it does not survive review under *Turner*'s second step, because the record shows that Plaintiff failed to file a grievance related to his claims.

At *Turner*'s second step, any disputed facts must be examined to determine whether Plaintiff exhausted the available administrative remedies prior to filing suit. In support of their motion to dismiss, Defendants provided three grievances Plaintiff filed while at the Jail, the applicable grievance policy, and an affidavit from Frank Woods, the Jail Commander. (Doc. 33-1; 33-2; 33-3). In a supplement to his complaint and in response to Defendants' motion, Plaintiff stated that he filed a grievance regarding the incidents at issue in this case and provided the purported grievance. (Doc. 8-1, p. 1). This grievance was not among the grievances submitted with Defendants' motion. Defendants concede that this "grievance was clearly received and addressed by the officer who received it" and argue that this grievance does not pertain to the allegations at issue in this case. (Doc. 41, p. 3).

The evidence presented by the parties shows that Plaintiff filled out four (4) grievance forms while incarcerated at the Jail. (Doc. 33-2). The only grievance arguable relevant to this case is the grievance provided by Plaintiff, purported to have been submitted to an Officer Debarros on

February 22, 2024, and resubmitted on March 16, 2024.[1] (Doc. 8-1). As best the Court can ascertain, Plaintiff grieved:

> staff in violation of 3rd procedural eight days I've been let out of room to shower [&] try to contact family/attorney on kiosk. Not supposed to be confined more than 23 hours a day. let out. 2/5 – 2/11 – 2/15 – 2/18… today is 2/22. Similar pattern before I started documenting. Need 1983 prisoner civil rights complaint. have been asking for 1983 grievance for weeks.

*(Id)*.

Plaintiff further explained, again as best the Court can ascertain: "inhumain [sic] treatment had to go without [illegible], store, visits, haircut for Court, shave, & not able to contact attorney to prepare for preliminary." (*Id.*). The officer or staff member who received the grievance wrote, "Knight I need you to rewrite this on different grievances. You can only grieve one thing at the time. I'll underline the different ones. I have also asked about the 1983 grievance. I'm waiting on a response. . . ." (*Id.*). This grievance is not signed by any officer or staff member, and the "receipt of grievance" portion is blank. (*Id.*).

Defendants assert that this grievance does not support exhaustion because "the dates provided by Plaintiff are in February, not March 8–14, 2024, which is the only pertinent time frame at issue." (Doc. 41, p. 4). Defendants are correct. Plaintiff has presented no evidence that he properly grieved the alleged March 2024 incidents. The only evidence provided by Plaintiff that seemingly relates to a March 2024 date is the grievance, noted above, that Plaintiff claims he resubmitted on March 16, 2024. (Doc. 8-1, p. 1). However, this grievance does not concern any of

---

[1] The evidence submitted by Defendants shows that Plaintiff filed three other grievances while at the Jail. (Doc. 33-3, pp. 16–18). However, all three of these grievances were filed months prior to the March 2024 dates at issue in this case and, as such, are not material to exhaustion of Plaintiff's claims.

the March 2024 dates. It does not make any claims regarding Defendants Beasley and McCollum or make any reference to denial of medical treatment. Further, the purported response from an officer, which is unsigned, details that the grievance was not accepted because it contained multiple allegations, and, as such, was not in compliance with the grievance policy. (*Id.*). On its face, even if the grievance related to the remaining claims in this suit, which it does not, Plaintiff did not properly comply with the SOP because he did not grieve only one issue. Further, there is no evidence to indicate that Plaintiff completed the grievance process by filing a timely appeal.

In response to Defendants' motion, Plaintiff stated that the grievance process is a "dead end procedure." (Doc. 35, p. 2). In support, he directs the Court to the February 22, 2024, grievance, noted above, which he states shows that the process is a dead end because it was not provided by Defendants. (*Id.*). This statement could be construed as an argument that the administrative grievance process was unavailable to him.

"A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner*, 541 F.3d at 1084 (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322–23 (11th Cir. 2007). Once a defendant shows that an administrative remedy is available, "the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was subjectively and objectively unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quotations and citations omitted). Courts have outlined three different ways a plaintiff can show that administrative remedies are unavailable:

> The modifier "available" means that an administrative remedy must provide the possibility of some relief. *Id.* at 643. There are three kinds of circumstances that make an administrative remedy unavailable. *Id.* First, an administrative remedy is

6

unavailable when the administrative procedure operates as a simple "dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates. *Id.* For example, if a handbook required inmates to submit grievances to a particular office and the office disclaims the capacity to consider petitions or if officials have authority but decline to exercise it, then it is unavailable. *Id.* Second, a remedy is unavailable when an administrative scheme is so opaque that it is incapable of use. *Id.* The mechanism may exist to provide relief, but no ordinary prisoner can discern or navigate it. *Id.* at 643–644. Third, a remedy is unavailable when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, and intimidation. *Id.* at 644.

*McDowell v. Bowman*, 2022 WL 4140331, at \*3 (11th Cir. Sept. 13, 2022) (citing *Ross v. Blake*,

578 U.S. 632 (2016)).

For purposes of unavailability, Defendants carried their initial burden by providing the Court with the Jail's administrative process. (Doc. 33-3). To survive, Plaintiff must have shown that the Jail's grievance procedure was both subjectively and objectively unavailable. He has not done so.

His assertions that the process operated as a dead end would fall under the first *Ross* exception. The record, however, does not support a finding that the Jail's grievance procedure was unavailable. Plaintiff admitted that the Jail had a grievance procedure. (Doc. 10, p. 3). As to the first *Ross* exception, Plaintiff does not support any argument that this process operated as a dead end. As discussed above, Plaintiff has used the grievance system four (4) times since his arrival at the Jail. (Docs. 8-1; 33-3). All grievances in the record were signed or responded to, and Plaintiff's allegations that he never received grievance forms is contradicted by the four grievances in the record. *See* (Doc. 35, pp. 2–3). Nothing in the record suggests that Plaintiff was deterred from filing a grievance concerning the incidents in this case. Rather, the record shows that the grievance process was available to Plaintiff because he filed a grievance concerning similar issues months

7

prior to the allegations at issue in this case. Based on the record before the Court, the grievance process was available to Plaintiff, and he is not excused from the exhaustion requirement.

### III.    Failure to Prosecute

In the alternative, Plaintiff's case should be dismissed without prejudice for failure to prosecute due to Plaintiff's effective abandonment of this action. On October 21, 2025, the Court ordered the parties to appear before the Court on December 10, 2025, for an evidentiary hearing. (Doc. 44).  Although the evidence, as described above, indicated that Plaintiff had not exhausted remedies, the hearing was scheduled in an abundance of caution to inquire into the circumstances of the grievance dated February 22, 2024, that Plaintiff submitted with his amended complaint, which was not included in Defendants' records.

On December 4, 2025, Plaintiff called the Clerk's office and spoke with a deputy clerk, stating that he did not have transportation to appear at the hearing. The deputy clerk instructed Plaintiff to file a Motion to Continue if he would not be able to attend the evidentiary hearing. Plaintiff did not appear before the Court for the evidentiary hearing. Defendants appeared and requested the hearing be continued to afford Plaintiff the opportunity to appear. On the date of the hearing, the Court received Plaintiff's motion to continue (Doc. 45), stating that Plaintiff was unable to obtain transportation to Macon from his residence in Dahlonega, Georgia. The Court ordered the parties to appear for a second time for an evidentiary hearing on January 15, 2026. (Doc. 47). The Court also ordered Plaintiff to show cause within fourteen days why the case should not be dismissed for failure to comply with the Court's previous order to appear. (Docs. 44, 47). Plaintiff was notified that should he fail to respond or attend the January 15, 2026, evidentiary hearing, this action would be dismissed without prejudice. (Doc. 47).

Plaintiff did not respond to the Court's show cause order. *See* (Docket). Nor did he appear before the Court for the scheduled January 15, 2026, evidentiary hearing. On January 12, 2026, Plaintiff again called the Clerk's office and spoke with a deputy clerk, stating that he was concerned about a method of transportation to appear at the hearing. Plaintiff was again informed that he was welcome to file a motion should he see fit. He did not do so and did not appear before the Court at the scheduled hearing.

In both cases, Plaintiff had ample time to make transportation arrangements or file a timely motion to continue. The Court issued notice for the December 10 hearing on October 31, 2025, giving him 40 days to prepare for the hearing or move for a continuance. He waited until the last minute, calling the Clerk's office six days before the hearing and filing a motion that only arrived on the date of the hearing. The Court granted this continuance and gave Plaintiff an additional 36 days to prepare, strictly warning Plaintiff that his failure to appear could result in dismissal of the action for failure to prosecute. Again Plaintiff waited until the last minute, just three days before the hearing, to call the Clerk's office just three days and state that he was having difficulty with transportation. He did not file a motion for continuance. On both occasions, Defendants were required to drive from Athens, Georgia, and appeared with counsel and witnesses, at significant expense to Defendants.

## CONCLUSION

Because Plaintiff failed to exhaust his administrative remedies as required before bringing this action, it is **RECOMMENDED** that Defendants' motion to dismiss (Doc. 33) be **GRANTED** and that Plaintiff's claim be **DISMISSED**. In the alternative, it is **RECOMMENDED** that this action be **DISMISSED without prejudice** for failure to prosecute under Rule 41(b) of the Federal

9

Rules of Civil Procedure. *See, e.g., Brown v. Tallahassee Police Dep't*, 205 F. App'x 802, 802-03 (11th Cir. 2006).

## **OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 20th day of January, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge

10